IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| AL EVERITT BOYETT, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:05-CV-966-D |
| | ) |
| ANTHONY CLARK, SHERIFF, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' SPECIAL REPORT AND ANSWER

Defendants, Southern Health Partners, Inc. ("SHP"), Jamie Mitchell ("Nurse Mitchell") and Dr. Millard McWhorter ("Dr. McWhorter") submit their Special Report and Answer to the Court as follows:

### I. INTRODUCTION

The plaintiff filed his Complaint on October 7, 2005, and his Amended Complaint on February 15, 2006. On October 14, 2005, this Court ordered Defendants to submit a Special Report concerning the factual allegations made by the plaintiff in his Complaint.

### II. PLAINTIFF'S ALLEGATIONS

The plaintiff alleges that the Defendants failed to provide adequate or appropriate medical attention in violation of the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Specifically, the plaintiff alleges that SHP, Jamie Mitchell and Dr. McWhorter denied the plaintiff proper medical care by failing to treat the plaintiff's hepatitis C.[1]

---

[1] This statement of the plaintiff's allegations is based upon the plaintiff's Complaint and Amended Complaint and the undersigned's interpretation of the issues raised. If other issues are presented, Defendant requests that this Honorable Court grant Defendants an opportunity to answer and address those issues.

### III. DEFENDANTS' ANSWER TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by the plaintiff as said allegations are untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the plaintiff of any right to which he was entitled. The plaintiff's Complaint and Amended Complaint fail to state a claim upon which relief can be granted. Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, the plaintiff's failure to comply with the Prison Litigation Reform Act and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the law.

### IV. SWORN STATEMENTS

Pursuant to Paragraph 2 of the Court's Order, Defendants submit the affidavits of Dr. McWhorter (Exhibit 1), Nurse Mitchell (Exhibit 2) and Annette Cain (Exhibit 3), who are persons having knowledge of the subject matter of the Complaint. Defendants also refer the Court to the affidavits of Sheriff Anthony Clark and Jail Administrator Kevin Smith, which are attached as Exhibits B and C to Co-Defendants' Special Report.

### V. STATEMENT OF FACTS

#### A. **Background**

1.  Dr. McWhorter has been licensed to practice medicine in the State of Alabama since 1986. From January 1994 to July 1999, he was the medical director for the Central State Prison in Macon, Georgia. From October 1999 to July 2001, he was the medical director for Fountain/Holman Correctional Facilities in Atmore, Alabama. From February 2002 to the present,

he has been employed by SHP as the medical director of the Covington County Jail in Andalusia, Alabama. (McWhorter Aff. at ¶¶ 2-3.)

2. Nurse Mitchell has been a licensed nurse for over twenty-three years. From 1983-1989, she was licensed by the state of Alabama as an LPN. From 1989 to the present, she has been licensed by the state of Alabama as an R.N. From August 2005 to November 16, 2005, she was employed as the medical team administrator for SHP at the Covington County Jail in Andalusia, Alabama. Currently, she is employed as a registered nurse on the medical/surgical floor of Andalusia Regional Hospital in Andalusia, Alabama. (Mitchell Aff. at ¶¶ 2-4.)

3. SHP provides medical care to inmates in various jail facilities, including the Covington County Jail. During the entire time of the plaintiff's incarceration in the Covington County Jail, health care services have been provided to the inmates by SHP pursuant to a contract between SHP and the Covington County Commission. Health care in the jail is provided under the direction of a medical team administrator as well as a medical director. During the period complained of by the plaintiff in this action (October 7, 2005), Dr. McWhorter was the medical director in the jail and Nurse Mitchell was the medical team administrator. (McWhorter Aff. at ¶ 4; Mitchell Aff. at ¶ 5.)

4. When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit. (McWhorter Aff. at ¶ 5; Mitchell Aff. at ¶ 6.)

    B.    **Chronology of the plaintiff's treatment**

5. Annette Cain is currently employed by SHP as the medical team administrator of the Covington County Jail. A true and correct copy of SHP's medical chart concerning the

plaintiff is attached to Nurse Cain's Affidavit as Exhibit A. Nurse Cain has testified that those records were made at or near the time of the events described therein and were made and kept in the regular course of SHP's business. (Cain Aff. at ¶ 2.)

6. On June 7, 2005, the plaintiff was booked into the Covington County Jail. On the plaintiff's medical screening form, jail personnel noted that the plaintiff had hepatitis but described the plaintiff as "fine at time of intake." (McWhorter Aff. at ¶ 8; Mitchell Aff. at ¶ 9.)

7. On June 8, 2005, nurse Connie Lyons interviewed the plaintiff for a medical staff screening form, noting that the plaintiff had a history of drug use and had been exposed to hepatitis C. (McWhorter Aff. at ¶ 9; Mitchell Aff. at ¶ 10.)

8. On June 13, 2005, the plaintiff completed an inmate sick call slip, where he complained of an ear infection. He was treated the next day by nurse Donna Cooey. Pursuant to Dr. McWhorter's standing order for treatment of ear infections, he received an ear wax removal kit with orders to use five to ten drops twice a day for four days. He was instructed to return to medical staff if the pain continued. (McWhorter Aff. at ¶ 10; Mitchell Aff. at ¶ 11.)

9. On June 17, 2005, Dr. McWhorter saw the plaintiff in followup to his complaints of pain in his ear, and started the plaintiff on Amoxicillin 500 mg., two tablets by mouth twice a day for seven days, and ordered that he continue with his ear wax removal kit. (McWhorter Aff. at ¶ 11; Mitchell Aff. at ¶ 12.)

10. Later that day, the plaintiff completed an inmate sick call slip, complaining that his ears were in pain. On the following day--June 18, 2005--he was seen by nurse Connie Lyons, and Dr. McWhorter ordered that he receive 800 mg. of ibuprofen, one table twice a day for seven days. (McWhorter Aff. at ¶ 12; Mitchell Aff. at ¶ 13.)

11. On June 19, 2005, Connie Lyons interviewed the plaintiff for a history and physical form, wherein she scheduled the plaintiff to see Dr. McWhorter on June 22, 2005. (McWhorter Aff. at ¶ 13; Mitchell Aff. at ¶ 14.)

12. On June 22, 2005, Dr. McWhorter saw the plaintiff for complaints of abdominal pain and impacted ear wax. He ordered Zantac 150 mg., one tablet twice a day for 30 days, and Colace, to be applied to both ears every day. (McWhorter Aff. at ¶ 14; Mitchell Aff. at ¶ 15.)

13. On June 24, 2005, the plaintiff complained of pain with his ears again, and he was referred to Dr. McWhorter. (McWhorter Aff. at ¶ 15; Mitchell Aff. at ¶ 16.)

14. On June 29, 2005, the plaintiff completed an inmate request/grievance form where he requested that Dr. McWhorter refer him to another doctor regarding his ear pain. Later that day, Dr. McWhorter saw the plaintiff, and he presented to Dr. McWhorter with complaints of ear congestion and leg cramps. With regard to the plaintiff's ears, he observed that there was fluid behind the tympanic membrane. His assessment was chronic sinusitis and leg cramps. He ordered the plaintiff to receive 750 mg. of Robaxin, one tablet twice a day for ten days, and Deconamine SR, one capsule twice a day for thirty days, with refill x 2. (McWhorter Aff. at ¶ 16; Mitchell Aff. at ¶ 17.)

15. After June 29, 2005, the plaintiff never complained of any further pain or problems with his ears. (McWhorter Aff. at ¶ 17; Mitchell Aff. at ¶ 18.)

16. On August 16, 2005, an X-ray was performed on the plaintiff's left hand by Dr. Vincent Martin at Southern Radiology Services, LLC, noting that the plaintiff had a "nondisplaced fracture of the distal fifth metacarpal." (McWhorter Aff. at ¶ 18; Mitchell Aff. at ¶ 19.)

17. On August 17, 2005, Dr. McWhorter saw the plaintiff for a follow-up of his left hand injury. He informed the plaintiff that he saw no fracture in the X-Ray, and that he would send the X-Ray back to the radiologist to read. During this presentation, the plaintiff complained of having hepatitis C. (McWhorter Aff. at ¶ 19; Mitchell Aff. at ¶ 20.)

18. On August 25, 2005, nurse Patsy Colvin interviewed the plaintiff for a history and physical. In the plaintiff's medical history, the plaintiff stated that his family physician was Dr. V.J. Viyas and that he was on no current medication for any medical condition. The plaintiff reported a history of psychiatric problems and illegal drug use. (McWhorter Aff. at ¶ 20; Mitchell Aff. at ¶ 21.)

19. On September 3, 2005, the plaintiff complained of problems related to "sores" on his posterior. He was seen later that day by nurse Camelia Williams, who carried out Dr. McWhorter's standing order with regard to treatment of sores and boils: Doxcycline, one tablet or capsule, 100 mg. by mouth twice a day for ten days; ibuprofen, 800 mg., one tablet by mouth twice per day for ten days; and Hibiclens, which is a solution that the plaintiff would be required to shower with three times that week. (McWhorter Aff. at ¶ 21; Mitchell Aff. at ¶ 22.)

20. On September 7, 2005, Dr. McWhorter saw the plaintiff regarding his hepatitis C condition. Dr. McWhorter told the plaintiff that he did not think the plaintiff needed treatment for this condition, but that the plaintiff could see his own doctor at his own expense. The plaintiff never made arrangements to see his own physician. (McWhorter Aff. at ¶ 22; Mitchell Aff. at ¶ 23.)

21. On October 7, 2005, the plaintiff again complained of a boil or bite, this time on his inner thigh. On the same day, he was seen by nurse Donna Cooey, who noted that there were

sores on his groin area and that he had a very large sore on his left side with edema and redness, and that the plaintiff was complaining of severe pain. Dr. McWhorter ordered that the plaintiff receive Bactrim DS, one tablet by mouth once a day for ten days, Doxcycline, one tablet or capsule, 100 mg. by mouth twice a day for ten days, and Percogesic, two tablets by mouth twice a day for ten days. The plaintiff was to follow up with Dr. McWhorter on his next visit to the jail, which would have been Wednesday, October 12, 2005. (McWhorter Aff. at ¶ 23; Mitchell Aff. at ¶ 24.)

22.     However, on October 12, 2005, Boyett refused to be seen by Dr. McWhorter. (McWhorter Aff. at ¶ 24; Mitchell Aff. at ¶ 25.)

23.     On October 21, 2005, the plaintiff executed a request/grievance form where he requested that Dr. McWhorter schedule a "RNA test for HCV," which is a test to confirm hepatitis C. On October 24, 2005, Dr. McWhorter ordered that the plaintiff receive this test, which confirmed that the plaintiff was positive for hepatitis C. (McWhorter Aff. at ¶ 25; Mitchell Aff. at ¶ 26.)

24.     On November 1, 2005, the plaintiff complained that sores were "coming back," and that he had a brown spot on his leg that had been spreading and reached the other leg. On the same day, Jamie Mitchell treated the plaintiff, noting that he had sores on his leg and buttocks. The plaintiff was then administered Doxcycline, one tablet or capsule, 100 mg. by mouth twice a day for ten days, Bactrim DS, one tablet by mouth twice a day for ten days, ibuprofen, 800 mg. twice a day for ten days, and Tums, 2 tablets twice a day as needed. On November 7, 2005, Dr. McWhorter ordered that the plaintiff apply miconazole cream to his genital area twice a day to treat this condition. (McWhorter Aff. at ¶ 26; Mitchell Aff. at ¶ 27.)

### C.  SHP was not deliberately indifferent to the plaintiff's medical needs.

25. Neither Dr. McWhorter nor Nurse Mitchell ever told the plaintiff that it would be too expensive or costly to treat the plaintiff's hepatitis C. Dr. McWhorter's decision not to treat the plaintiff's hepatitis C had nothing to do with the cost or expense of such treatment. On the contrary, based upon his medical background, training and experience, Dr. McWhorter found that the plaintiff, although hepatitis C positive, was asymptomatic and not in need of treatment. It is Dr. McWhorter's opinion that his decision not to treat the plaintiff's asymptomatic hepatitis C was within the standard of care for a physician encountering a similar patient under the same or similar circumstances, and that it certainly was not indifferent to the plaintiff's medical needs, nor did it place the plaintiff at risk of any serious harm. (McWhorter Aff. at ¶ 27; Mitchell Aff. at ¶ 28.)

26. All necessary care provided to the plaintiff by SHP, Jamie Mitchell and Dr. McWhorter was appropriate, timely and within the standard of care. (McWhorter Aff. at ¶ 29; Mitchell Aff. at ¶ 30.)

27. On no occasion was the plaintiff ever at risk of serious harm, nor was the medical staff ever indifferent to any complaint that he made. (McWhorter Aff. at ¶ 30; Mitchell Aff. at ¶ 31.)

### D.  The plaintiff failed to exhaust administrative remedies.

28. At the time of the plaintiff's incarceration, the Covington County Jail had an inmate grievance procedure. (Clark Aff. at ¶ 4.) Grievances were required to be in writing and could be filed with any member of the jail staff. (*Id.*) Copies of grievance forms are kept in the inmate's jail file. (*Id.*) Jail policy provided an exception that allowed emergency grievances to be made orally. (*Id.*) It was a violation of jail policy to deny an inmate access to the grievance procedure.

(*Id.* at ¶ 6.) The plaintiff was aware of the grievance procedure. (*Id.* at ¶ 5.) The plaintiff never filed a grievance specifically related to his hepatitis C condition. (See Inmate File attached as Ex. A to Co-Defendants' Special Report.)

VI.  **LEGAL ARGUMENT**

  A.  **The plaintiff's claims are barred by the Prison Litigation Reform Act for his failure to exhaust administrative remedies.**

The Prison Litigation Reform Act requires exhaustion of all available administrative remedies before an inmate may file a lawsuit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); *Booth v. Churner,* 532 U.S. 731, 733-34 (2001) (stating that 42 U.S.C. § 1997e(a) "requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions."). Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

The plaintiff in this case has failed to utilize two separate distinct administrative remedies available to him. As a result, his claims are barred.

First, the plaintiff failed to properly utilize the grievance procedures provided at the local level in the Covington County Jail to address his claims prior to the filing of this lawsuit. The Covington County Jail had a grievance procedure (Clark Aff. at ¶ 4.), and the plaintiff never filed a grievance specifically related to his hepatitis C claim. (See Inmate File attached as Ex. A to Co-Defendants' Special Report.)

Second, the plaintiff has not alleged that he pursued any grievance through the State Board of Adjustment. See *Brown v. Tombs,* 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners

9

to affirmatively show that they have exhausted administrative remedies). Alabama law provides the opportunity to file a claim and proceed before the Alabama State Board of Adjustment pursuant to Ala. Code § 41-9-60 et seq.

Because the plaintiff failed to exhaust all administrative remedies, the plaintiffs claims are barred by 42 U.S.C. § 1997e(a). See *Alexander v. Hawk*, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of present action due to failure to exhaust administrative remedies).

### B. SHP is due to be dismissed, because there is no evidence that SHP itself directly caused the violation of any constitutional right through its adoption of some official policy or practice.

Precedent from the U.S. Court of Appeals for the Eleventh Circuit provides that when a private corporation contracts with a state to perform a function traditionally within the province of the state government, including the provision of medical services to state inmates, then that corporation should be treated as a governmental entity and as a person acting under color of state law within the meaning of 42 U.S.C. §1983. *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997); *Edwards v. Alabama Department of Corrections*, 81 F.Supp.2d 1242, 1254 (M.D. Ala. 2000). Although the private entity operating under such circumstances is not entitled to qualified immunity, certain special requirements for liability apply. *Edwards*, 81 F.Supp.2d at 1254-55; *McDuffie v. Hopper*, 982 F.Supp. 817, 825 (M.D. Ala. 1997). Thus, in order to prove that SHP should be liable in this case, the plaintiff would have to demonstrate that SHP itself directly caused the violation of his constitutional rights through SHP's adoption of some official policy or practice. See, *e.g., Monell v. Department of Social Services*, 436 U.S. 658, 695 (1978); *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1502-03 (11th Cir. 1985). The plaintiff has failed to assert a specific allegation against SHP in his complaint, and a theory of *respondeat superior* is insufficient in any event to support a

§1983 claim. Therefore, even the broad assertion that SHP was generally responsible for the acts or omissions of its medical staff would be inadequate to prove liability. For this reason, SHP is entitled to a full and final summary judgment. See *Monell*, 436 U.S. at 691-92; *Edwards*, 81 F.Supp.2d at 1255.

### C. The plaintiff's claims against SHP, Dr. McWhorter and Nurse Mitchell are due to be dismissed, because the plaintiff has presented no evidence that Defendants were deliberately indifferent to a serious medical condition.

In order to prevail under 42 U.S.C. § 1983 on his medical claim, the plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Kelley v. Hicks*, 400 F. 3d 1282, 1284 n. 3 (11th Cir. 2005). Where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985).

Indeed, in *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the United States Supreme Court held that medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Thus, the inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute an unnecessary and wanton infliction of pain." (*Id.* at 105-06.) Instead, it must be shown that there was a "deliberate indifference" to the serious medical needs of a prisoner. (*Id.* at 104.)

11

In addition, an inmate does not have a right to a ***specific*** kind of medical treatment. *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such treatment is not a federal constitutional question***") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the plaintiff. See *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although the plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments.").

In this case, there is absolutely no evidence from which a jury could find that SHP, Nurse Mitchell and/or Dr. McWhorter acted with deliberate indifference to any serious medical need of the plaintiff. On the contrary, the plaintiff's medical chart clearly demonstrates that all of his medical needs were addressed in a timely and appropriate fashion. With regard to the plaintiff's allegation that SHP, Dr. McWhorter and Nurse Mitchell should have treated his hepatitis C and did not do so because of the expense, Dr. McWhorter has testified that it was his medical opinion that the plaintiff was not in need of treatment for hepatitis C and that the cost of treatment played no role in his decision. (McWhorter Aff. at ¶ 27.) It is Dr. McWhorter's opinion that his decision not to treat the

12

plaintiff's asymptomatic hepatitis C was within the standard of care for a physician encountering a similar patient under the same or similar circumstances, and that it certainly was not indifferent to the plaintiff's medical needs, nor did it place the plaintiff at risk of any serious harm. (*Id.*)

### D. The plaintiff's reliance on Ala. Code § 14-6-19 is misguided, because Dr. McWhorter found that treatment of the plaintiff's hepatitis C was not necessary.

Ala. Code § 14-6-19 states, in its entirety, as follows:

> Necessary clothing and bedding must be furnished by the sheriff or jailer, at the expense of the county, to those prisoners who are unable to provide them for themselves, and also necessary medicines and medical attention to those who are sick and injured, when they are unable to provide them for themselves.

As set out above, it is Dr. McWhorter's medical opinion that treatment for the plaintiff's hepatitis C was not necessary. The plaintiff has failed to present any medical testimony rebutting Dr. McWhorter's medical opinion. As such, the plaintiff finds no support for his Section 1983 claim in Ala. Code § 14-6-19.

### E. The plaintiff's reliance on Ala. Code § 14-3-30(b) is also without merit, because the plaintiff did not have a medical condition which required immediate treatment at a medical care facility outside the county jail.

Ala. Code § 14-3-30(b) states, in pertinent part and as quoted in the plaintiff's Amended Complaint, as follows:

> ... When an inmate sentenced to the custody of the department and the department is in receipt of a transcript of such sentence, is housed in the county jail, and the inmate develops a medical condition or has been diagnosed as having a medical condition which, in the opinion of a physician licensed in Alabama, would require treatment or a medical procedure or both, involving a cost of more than two thousand dollars ($2,000), the inmate shall be transferred within three days to a state owned or operated correctional facility or to the physical custody of the department as determined by the

> Commissioner of the Department of Corrections. The inmate shall receive treatment in the same manner as other state inmates.

The plaintiff has failed to present any sworn medical testimony from a physician licensed in the State of Alabama that the plaintiff required treatment or a medical procedure for his hepatitis C. Indeed, the only evidence before this Court with regard to the plaintiff's hepatitis C is that of Dr. McWhorter, who is licensed as a physician in the State of Alabama and has testified that the plaintiff was not in need of treatment for hepatitis C.

## VII. REQUEST THAT SPECIAL REPORT BE TREATED AS MOTION FOR SUMMARY JUDGMENT.

### A. Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants move this Court to enter summary judgment in their favor, because, as is more particularly shown above, there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law.

On a motion for summary judgment, the court should view the evidence in a light most favorable to the nonmovant, However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves*, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299. "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" *Marsh v. Butler County*, 268 F.3d 1014, 1036

n.16 (11th Cir. 2001) (*en banc*) quoting *Massachusetts School of Law v. American Bar*, 142 F.3d 26, 40 (1st Cir. 1998).

**B.     Motion for Summary Judgment**

Defendants respectfully request that this honorable Court treat this Special Report as a motion for summary judgment and grant unto them the same.

*/s/ Robert N. Bailey*
Daniel F. Beasley
Robert N. Bailey, II

LANIER FORD SHAVER & PAYNE P.C.
200 West Side Square, Suite 5000
P.O. Box 2087
Huntsville, Alabama 35804
(256) 535-1100

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 13 day of March, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Scott Gosnell, Esq.
Webb & Eley
P.O. Box 240909
Montgomery, AL  36124-0909

and I hereby certify that I have mailed by United States Mail, postage prepaid, the document to the following non-CM/ECF participant:

Al Everitt Boyett
3800 Fountain
Atmore, AL  36503

*/s/ Robert N. Bailey*
Of Counsel

15