IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| AL EVERITT BOYETT, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:05-CV-966-D |
| | ) |
| ANTHONY CLARK, SHERIFF, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT OF JAMIE MITCHELL, R.N.

Before me, the undersigned notary public, in and for said County and State, personally appeared **Jamie Mitchell, R.N.**, who, after first being duly sworn by me, deposes and states as follows:

1. My name is Jamie Mitchell. I am over the age of 19 years and have personal knowledge of the facts contained herein.

2. I obtained my LPN degree from Ed Reid Technical College in Evergreen, Alabama in 1983, and became licensed by the State of Alabama as an LPN. From 1983 to 1989, I was an LPN on the medical/surgery unit of D.W. McMillian Hospital in Brewton, Alabama. From 1989 to 1991, I was an LPN on the ICU unit of D.W. McMillian Hospital in Brewton, Alabama.

3. In 1991, I obtained my RN degree from Jefferson Davis, Jr. College in Brewton, Alabama and became licensed by the State of Alabama as an RN. From 1991 to 1997, I was an RN on the ICU unit of D.W. McMillian Hospital in Brewton, Alabama. From February 1998 to February 2000, I was a registered nurse for Correctional Medical Services at Fountain/Holman Correctional

Facilities in Atmore, Alabama. From March 2000 to August 2000, I was an agency nurse for Star-Med in Mobile, Alabama. From August 2000 to March 2002, I was a registered nurse at Gentiva Home Health Services in Andalusia, Alabama. From March 2002 to August 2005, I was a registered nurse in the emergency department of Elba General Hospital in Elba, Alabama.

4. From August 2005 to November 16, 2005, I was employed as the medical team administrator for Southern Health Partners, Inc. at the Covington County Jail in Andalusia, Alabama. Currently, I am employed as a registered nurse on the medical/surgical floor of Andalusia Regional Hospital in Andalusia, Alabama.

5. Southern Health Partners, Inc. (hereinafter SHP) provides medical care to inmates in various jail facilities including the Covington County Jail. During the entire time of plaintiff's incarceration in the Covington County Jail, health care services have been provided to the inmates by SHP pursuant to a contract between SHP and the Covington County Commission. Health care in the jail is provided under the direction of a medical team administrator as well as a medical director. During the period complained of by the plaintiff in this action, the medical director in the jail was Dr. Millard McWhorter and I was the Medical Team Administrator.

6. When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit.

7. As I understand the plaintiff's complaint and amended complaint in this case, the plaintiff alleges that SHP, Dr. McWhorter and myself denied the plaintiff proper medical care by failing to acknowledge and treat the plaintiff's hepatitis C.

8. I have reviewed SHP's entire medical chart concerning the plaintiff.

9. On June 7, 2005, the plaintiff was booked into the Covington County Jail. On plaintiff's medical screening form, jail personnel noted that plaintiff had hepatitis but described plaintiff as "fine at time of intake."

10. On June 8, 2005, nurse Connie Lyons interviewed the plaintiff for a medical staff screening form, noting that plaintiff had a history of drug use and had been exposed to hepatitis C.

11. On June 13, 2005, the plaintiff completed an inmate sick call slip, where he complained of an ear infection. He was treated the next day by nurse Donna Cooey. Pursuant to Dr. McWhorter's standing order for treatment of ear infections, he received an ear wax removal kit with orders to use five to ten drops twice a day for four days. He was instructed to return to medical staff if the pain continued.

12. On June 17, 2005, Dr. McWhorter saw the plaintiff in followup to his complaints of pain in his ear, and started the plaintiff on Amoxicillin 500 mg., two tablets by mouth twice a day for seven days, and ordered that plaintiff continue with his ear wax removal kit.

13. Later that day, the plaintiff completed an inmate sick call slip, complaining that his ears were in pain. On the following day--June 18, 2005--he was seen by nurse Connie Lyons, and Dr. McWhorter ordered that he receive 800 mg. of ibuprofen, one table twice a day for seven days.

14. On June 19, 2005, Connie Lyons interviewed the plaintiff for a history and physical form, wherein she scheduled plaintiff to see Dr. McWhorter on June 22, 2005.

15. On June 22, 2005, Dr. McWhorter saw the plaintiff for complaints of abdominal pain and impacted ear wax. Dr. McWhorter ordered Zantac 150 mg., one tablet twice a day for 30 days, and Colace, to be applied to both ears every day.

16. On June 24, 2005, the plaintiff complained of pain with his ears again, and he was referred to Dr. McWhorter.

17. On June 29, 2005, the plaintiff completed an inmate request/grievance form where he requested that Dr. McWhorter refer him to another doctor regarding his ear pain. Later that day, Dr. McWhorter saw the plaintiff, who presented with complaints of ear congestion and leg cramps. With regard to the plaintiff's ears, Dr. McWhorter noted that there was fluid behind the tympanic membrane. Dr. McWhorter's assessment was chronic sinusitis and leg cramps. Dr. McWhorter ordered the plaintiff to receive 750 mg. of Robaxin, one tablet twice a day for ten days, and Deconamine SR, one capsule twice a day for thirty days, with refill x 2.

18. After June 29, 2005, the medical chart reflects that plaintiff never complained of any further pain or problems with his ears.

19. On August 16, 2005, an X-ray was performed on the plaintiff's left hand by Dr. Vincent Martin at Southern Radiology Services, LLC, noting that the plaintiff had a "nondisplaced fracture of the distal fifth metacarpal."

20. On August 17, 2005, Dr. McWhorter saw the plaintiff for a follow-up of his left hand injury. Dr. McWhorter noted that he saw no fracture in the X-Ray, and that he would send the X-Ray back to the radiologist to read. During this presentation, Dr. McWhorter notes that the plaintiff complained of having hepatitis C.

21. On August 25, 2005, nurse Patsy Colvin interviewed the plaintiff for a history and physical. In the plaintiff's medical history, the plaintiff stated that his family physician was Dr. V.J. Viyas and that he was on no current medication for any medical condition.

22. On September 3, 2005, the plaintiff complained of problems related to "sores" on his posterior. He was seen later that day by nurse Camelia Williams, who carried out Dr. McWhorter's standing order with regard to treatment of sores and boils: Doxcycline, one tablet or capsule, 100 mg. by mouth twice a day for ten days; ibuprofen, 800 mg., one tablet by mouth twice per day for ten days; and Hibiclens, which is a solution that the plaintiff would be required to shower with three times that week.

23. On September 7, 2005, Dr. McWhorter saw the plaintiff regarding his hepatitis C condition, and noted that plaintiff could see plaintiff's own doctor at plaintiff's expense. The plaintiff never made arrangements to see his own physician.

24. On October 7, 2005, the plaintiff again complained of a boil or bite, this time on his inner thigh. On the same day, he was seen by nurse Donna Cooey, who noted that there were sores on his groin area and that he had a very large sore on his left side with edema and redness, and that the plaintiff was complaining of severe pain. Dr. McWhorter ordered that the plaintiff receive Bactrim DS, one tablet by mouth once a day for ten days, Doxcycline, one tablet or capsule, 100 mg. by mouth twice a day for ten days, and Percogesic, two tablets by mouth twice a day for ten days. The plaintiff was to follow up with Dr. McWhorter on Dr. McWhorter's next visit to the jail, which would have been Wednesday, October 12, 2005.

25. However, on October 12, 2005, Boyett refused to be seen by Dr. McWhorter.

26. On October 21, 2005, the plaintiff executed a request/grievance form where he requested that Dr. McWhorter schedule a "RNA test for HCV," which is a test to confirm hepatitis C. On October 24, 2005, I noted the plaintiff's request, and Dr. McWhorter ordered that the plaintiff receive this test, which confirmed that the plaintiff was positive for hepatitis C.

27. On November 1, 2005, the plaintiff complained that sores were "coming back," and that he had a brown spot on his leg that had been spreading and reached the other leg. On the same day, I treated the plaintiff, noting that he had sores on his leg and buttocks. The plaintiff was then administered Doxcycline, one tablet or capsule, 100 mg. by mouth twice a day for ten days, Bactrim DS, one tablet by mouth twice a day for ten days, ibuprofen, 800 mg. twice a day for ten days, and Tums, 2 tablets twice a day as needed. On November 7, 2005, Dr. McWhorter ordered that the plaintiff apply miconazole cream to his genital area twice a day to treat this condition.

28. I never told the plaintiff that it would be too expensive or costly to treat his hepatitis C.

29. All of the information contained herein is based upon my personal knowledge and the plaintiff's medical chart.

30. All necessary care provided to the plaintiff was appropriate, timely and within the standard of care.

31. On no occasion was the plaintiff ever at risk of serious harm, nor was the medical staff ever indifferent to any complaint that he made.

_____
Jamie Mitchell, R.N.

STATE OF ALABAMA          )
                          )
COUNTY OF __Madison__     )

I, the undersigned Notary Public in and for said county in said state, hereby certify that Jamie Mitchell, whose name is signed to the foregoing and who is known to me, acknowledged before me that, being fully informed of the contents of said instrument, she executed the same voluntarily on the day the same bears date.

GIVEN UNDER MY HAND and official seal on this the __2__ day of __March__, 2006.

_____
Notary Public
My Commission Expires: __12-3-2007__