**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **AL EVERITT BOYETT, JR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO.:  2:05-CV-966-D** |
| | ) |
| **ANTHONY CLARK, SHERIFF, *et al.*,** | ) |
| | ) |
| **Defendants.** | ) |

**DEFENDANTS' SUPPLEMENT TO SPECIAL REPORT**

COME NOW Anthony Clark Sheriff of Covington County, and Kevin Smith, former Interim Jail Administrator of the Covington County Jail, defendants in this action (hereafter, "Defendants"), and submit their Supplemental Special Report to the Court as follows:

**I.     INTRODUCTION**

The Plaintiff filed his Complaint in the United States District Court for the Middle District of Alabama on October 7, 2005.  In his Complaint, the Plaintiff alleges that he was denied medical attention while an inmate at the Covington County Jail.  On October 14, 2005, the Court ordered the Defendants to file a Special Report.  On February 8, 2006, the Plaintiff filed his Amended Complaint, apparently further expounding upon his allegation of denial of medical attention.  On February 13, 2006, the Court ordered the Defendants to file an Answer and Special Report, addressing the allegations in the Amended Complaint.

**II.     PLAINTIFF'S ALLEGATIONS**

The Plaintiff continues to allege that he was denied medical attention while he was incarcerated at the Covington County Jail.

### III.    DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants Anthony Clark and Kevin Smith deny the allegations made against them by the Plaintiff, as said allegations are untrue and completely without basis in law or fact.

### A.    FACTS

Defendants adopt and incorporate the statement of Facts set forth in their original Special Report, and further state as follows:

At the time Plaintiff was incarcerated in the Covington County Jail (June 7, 2005) he was examined by jail personnel, who noted on a Medical Screening Form that Plaintiff suffered from Hepatitis,[1] but otherwise "appear[ed] fine at time of intake." (Medical File.) On August 30, 2005, Plaintiff wrote a letter to Sheriff Clark complaining about the fact that the SHP staff were not treating him for sores on his hip and buttocks. (Inmate File.) That letter made passing reference to the fact that the Plaintiff had had trouble with the jail medical staff regarding Hepatitis C, but did not elaborate on the issue, and that issue was not the focus of the letter. Id. Nevertheless, Sheriff Clark indicated that the issue would be looked into at once. Id. At no time did the Plaintiff file a grievance form regarding the subject of his Amended Complaint – i.e. the requested course of treatment for his Hepatitis C. Id. Plaintiff also filed his Complaint in this matter on October 7, 2005. (See, Complaint.)

Defendants Sheriff Anthony Clark and Deputy Kevin Smith are not trained medical professionals. (Affidavit of Anthony Clark dated March 14, 2006 (hereafter, "Clark Aff. II"), attached herewith as Exhibit "A" and incorporated herein as if fully set forth, at ¶ 3; Affidavit of Kevin Smith dated March 14, 2006 (hereafter, "Smith Aff. II"), attached herewith as Exhibit "B"

---

[1] For purposes of this Special Report, Defendants assume that the Plaintiff is indeed infected with the Hepatitis C virus. However, Defendants object to the Plaintiff's request that this Court take judicial notice of the fact that the Plaintiff does carry an active HCV infection, or has suffered from a past infection, or any particular prescribed course of treatment for such an infection.

and incorporated herein as if fully set forth, at ¶ 3.)  They have no training or other means of
determining the appropriate medical care for inmates.  Id.  Sheriff Clark and Deputy Smith rely
on Southern Health Care to provide appropriate medical care for jail inmates.  Id.  Sheriff Clark
does not give or withhold medical treatment to inmates based on the cost of the treatment.
(Clark Aff. II at ¶ 7.)

**B.    LAW RELATING TO THE PLAINTIFF'S ALLEGATIONS**

In addition to the arguments and defenses set forth below, these Defendants adopt and
incorporate the arguments and defenses set forth in their original Special Report.

**1.    The Plaintiff's Claims are Barred by the Prison Litigation Reform Act for Failure to Exhaust Administrative Remedies.**

The Prison Litigation Reform Act requires exhaustion of all available administrative
remedies ***before filing a lawsuit*** under 42 U.S.C. § 1983.  See 42 U.S.C. § 1997e(a) (2005).
Exhaustion is required for "all inmate suits about prison life, whether they involve general
circumstances or particular episodes, and whether they allege excessive force or some other
wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

The Plaintiff in this case has not utilized all administrative remedies available to him.  As
a result, his claims are barred.   First, the Plaintiff failed to properly utilize the grievance
procedure provided at the local level in the Covington County Jail to address his denial of
medical treatment claim prior to the filing of this lawsuit.  The Covington County Jail had a
grievance procedure.  (Affidavit of Anthony Clark dated November 21, 2005 (hereafter, "Clark
Aff. I"), attached to Defendants' Special Report as Exhibit "B" and incorporated herein as if
fully set forth, at ¶ 4; Affidavit of Kevin Smith dated November 23, 2005 (hereafter, "Smith Aff.
I"), attached to Defendants' Special Report as Exhibit C and incorporated herein as if fully set

forth, at ¶ 4.)  The Plaintiff never filed a grievance related to his claim of denial of medical treatment for Hepatitis C.  (See, generally, Inmate File.)

Also, the Plaintiff has not alleged that he pursued any grievance through the State Board of Adjustment.  See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).  Alabama law provides the opportunity to file a claim and proceed before the Alabama State Board of Adjustment pursuant to Ala. Code § 41-9-60 et seq.

As state officials, sheriffs and jailers enjoy sovereign immunity from suit under Article I, § 14 of the Alabama Constitution.  Turquitt, 137 F.3d at 1288-89.  Consequently, a claim for monetary damages against these Defendants is, in essence, a claim against the State of Alabama.  See Hafer v. Melo, 502 U.S. 21, 25 (1991); Lancaster, 116 F.3d at 1429; see also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  Because both the Covington County Jail and the State provided administrative remedies that the Plaintiff failed to exhaust, the Plaintiff's claims are barred by 42 U.S.C. § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of present action due to failure to exhaust administrative remedies).

2.    **These Defendants Are Entitled to Qualified Immunity.**

In their individual capacities, Sheriff Clark and Kevin Smith are entitled to qualified immunity and a dismissal of Plaintiff's claims unless they violated his clearly established constitutional rights of which a reasonable person would have known.  Lancaster v. Monroe County, 116 F.3d 1419, 1424 (11th Cir. 1997).[2]

---

[2] The applicable standards and policies related to qualified immunity, as established by relevant case law, are set forth in Defendants' initial Special Report, and in the interest of brevity and conservation of this Court's time, will not be reiterated here.

The instant Plaintiff alleges that he was denied medical care.[3]  These Defendants are entitled to judgment in their favor as a matter of law on these claims for three reasons.  First, Defendants' policies and actions were not deliberately indifferent to a constitutional right of the Plaintiff.  Second, these Defendants did not promulgate policies that caused the Plaintiff's alleged constitutional deprivations.  Third, no clearly established law provided Defendants with "fair warning" that their conduct was unlawful.

### (a)     The Plaintiff did not suffer from an objectively serious medical need.

A constitutional violation under the Eighth Amendment for denial of medical care is stated where the facts tend to show that a jail official was deliberately indifferent to the serious medical needs of an inmate.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  The Plaintiff must satisfy both an objective and a subjective inquiry.  Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995).  First, he must show an objectively serious medical need.  Taylor, 221 F.3d at 1258; Adams, 61 F.3d at 1543.  Second, the Plaintiff must demonstrate that the Defendants acted, or failed to act, with an attitude of "deliberate indifference" to that serious medical need.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  A prison official cannot be deliberately indifferent to an excessive risk to an inmate's health unless he is both "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . draws[s] the inference."  Farmer, 511 U.S. at 837.  In the instant case, the Plaintiff has failed to allege any facts tending to show that these Defendants knew of a serious medical condition.

While the Plaintiff's medical condition ***could*** become a serious medical need, it was not at the time of his incarceration.  In fact, at the time he was booked into the Covington County

---

[3] The Plaintiff fails to identify specific instances of his claim for denial of medical treatment, making the analysis of this claim, by necessity, rather general.

Jail, the medical screening officer indicated that the "inmate appears fine at time of intake."  <u>See</u>, Medical File.)  At that time, and at no time thereafter prior to filing this lawsuit, did the Plaintiff complain about his lack of treatment for Hepatitis C.  (Medical File.)  On September 7, 2005, Doctor McWhorter made a notation on his progress notes that the Plaintiff had laboratory results indicating Hepatitis C, and stating that the Plaintiff may see his own doctor for treatment at his own expense. (Medical File.)  However, there is no indication from either the Plaintiff's Medical File or Inmate File that the Plaintiff ever requested that he be allowed to see his own Physician. (<u>See, generally</u>, Medical File, Inmate File.)

Apparently, the Plaintiff disagrees with the amount and/or level of care he received from his medical care providers.  However, it is undisputed that the Plaintiff did not, as of the date of the Complaint, suffer from an objectively serious medical problem.  An inmate does not have a right to a ***specific*** kind of treatment.  <u>City of Revere v. Massachusetts General Hosp.</u>, 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such treatment is not a federal constitutional question***") (emphasis added).  Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff.  <u>See</u> <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), <u>cert. denied</u>, 475 U.S. 1096 (1986); <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the

dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments"). The Plaintiff has not alleged any facts to show that he has been in danger of serious injury. Consequently, he cannot show an objectively serious medical need for purposes of this lawsuit.

> **(ii)** **Even if the Plaintiff had an objectively serious need, Defendants were not deliberately indifferent.**

These Defendants were not deliberately indifferent to any objectively serious need that could be construed in the Plaintiff's Complaint. In order to be deliberately indifferent, an official must both know of a serious risk of harm and disregard it. Farmer, 511 U.S. at 837. There is no allegation in the Plaintiff's Complaint, and no indication from the Plaintiff's Inmate File, that Kevin Smith knew of the Plaintiff's condition. Further, other than a letter that mentions an HCV infection in passing, there is not indication from the Amended Complaint that Sheriff Clark had any knowledge of the Plaintiff's medical condition. Neither the Plaintiff nor Southern Health Partners ever informed either Defendant that the Plaintiff required specialized health care. (Clark Aff. II at ¶ 4; Smith Aff. II at ¶ 4; Inmate File.) The Covington County Jail staff, including Sheriff Clark and Kevin Smith, does not have any kind of medical education, training or experience. They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates. Also, the Plaintiff has not alleged that either Clark or Smith ever made a decision to withhold medical care based on the cost, or on any other consideration. In fact, the Plaintiff fails to allege that either of these Defendants made any decision regarding the Plaintiff's treatment whatsoever.

While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim. In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a

former inmate sued several prison doctors, a nurse, and the prison's medical director for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

In this case, Doctor McWhorter indicated that the Plaintiff should be seen by his own physician. However, the Plaintiff never made any attempt to do so. Assuming, *arguendo*, that the jail's medical staff in some way did not properly respond to the Plaintiff's medical complaints, these Defendants have not been deliberately indifferent. The Covington County Jail staff is **required** to rely upon the jail medical staff -- SHP. They cannot supplant their untrained opinion for that of medical professionals.

Further, even absent knowledge of the Plaintiff's alleged medical treatment needs, these Defendants were not indifferent to the Plaintiff's medical condition in that they attempted to transfer the Plaintiff to a state facility where he could receive treatment. In fact, the State of Alabama Department of Corrections is currently in litigation (Barbour County, *et al*. v.

<u>Campbell</u>, ongoing since 1992) concerning its refusal to accept State inmates residing in County prisons.  (Clark Aff. II at ¶ 6; Smith Aff. II at ¶ 6.)[4]

      (c)      **The policies and customs of the Sheriff's Department and Covington County Jail have not caused the Plaintiff's alleged injuries.**

The Eleventh Circuit applies a three-prong test that the Plaintiff must satisfy to establish supervisory liability: (1) the supervisor's actions, either in training, promulgating policy, or otherwise, were deliberately indifferent to the Plaintiff's rights; (2) a reasonable person in the supervisor's position would know that his or her actions were deliberately indifferent; and (3) the supervisor's conduct was causally related to the subordinate's constitutional infringement. <u>Greason v. Kemp</u>, 891 F.2d 829, 836-37 (11th Cir. 1990); <u>see also</u> <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).  Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates "on the basis of *respondeat superior* or vicarious liability." <u>Belcher v. City of Foley</u>, 30 F.3d 1390, 1396 (11th Cir. 1994) (citation and quotation omitted).  The causal connection may be established where the supervisor's improper "custom or policy ... result[s] in deliberate indifference to constitutional rights."  <u>Rivas v. Freeman</u>, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing <u>Zatler v. Wainwright</u>, 802 F.2d 397 (11th Cir. 1986)).  "[T]he inadequacy of police training may serve as the basis for § 1983 liability *only* where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989) (emphasis added).  The Complaint fails to allege facts supporting any of these elements, and there is no evidence to support the allegations even if they were made.

The Plaintiff has not alleged that the Defendants personally played any role in his medical treatment, and has failed to state, even in very general terms, how Defendants have

---

[4] The Plaintiff was, in fact, transferred to a State correctional facility on November 13, 2005.

deprived him of medical attention. The Plaintiff has not made any allegations with respect to training deficiencies of the deputies or the jail staff. Accordingly, the only way the Plaintiff may state a claim against these Defendants is in their roles as policymakers for the sheriff's department or the jail. See Crawford, 906 F.2d at 671.

These Defendants have put into place procedures for providing medical care to inmates. An official cannot be held liable just for instituting a facially constitutional policy. See City of Canton v. Harris, 489 U.S. 378, 387 (1989). The policies put in place by Defendants are constitutionally sound and did not cause the Plaintiff's alleged injuries. The Covington County Jail provides necessary medical care to inmates. The jail contracts with a medical care company to provide care to inmates. This policy exceeds the requirements of the Eleventh Circuit. See Free, 887 F.2d at 1556 (stating a jail "policy" of having no doctor or nurse on staff was not constitutionally deficient). The jail staff is required to comply with the instructions of the jail medical staff. These Defendants played no role in those instructions, and cannot be held liable for them.

Finally, these Defendants have instituted a policy that inmates who are readily identifiable as having communicable diseases, or who require medical treatment beyond what the Jail can provide, are transferred as soon as possible into the custody of an Alabama State correctional institution (provided the State will accept them as it is required to do). (Clark Aff. II at ¶ 5; Smith Aff. II at ¶ 5.) As stated above, such a policy is constitutionally sound, and did not cause the Plaintiff's injuries.[5]

**(d)     No clearly established law provided Defendants with "fair warning" that their conduct was unlawful.**

---

[5] Any reference in this Special Report to the Plaintiff's injuries is strictly hypothetical; the Plaintiff has failed to allege that he has suffered any injury.

Before stripping an official of qualified immunity, clearly established law must provide "fair warning" to the official that his or her conduct was illegal. Willingham, 321 F.3d at 1301. As previously made plain, the conduct of Defendants was in accordance with clearly established law. The Plaintiff is not constitutionally entitled to any particular type of treatment. City of Revere, 463 U.S. at 246. Sheriff Clark, Kevin Smith and the jail staff are entitled to rely on the opinions and orders of doctors and other health care providers with more education, training, and experience. Meloy, 302 F.3d at 845. As the Plaintiff cannot show a constitutional violation of clearly established law, these Defendants are entitled to qualified immunity. See Saucier, 533 U.S. at 201.

## IV.    MOTION FOR SUMMARY JUDGMENT

### A.    Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason, 891 F.2d at 831. However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[6] "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker;

---

[6] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby,

bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

### B.    Motion for Summary Judgment

Defendants respectfully request that this honorable Court treat this Special Report as a motion for summary judgment and grant unto them the same.

Respectfully submitted this 15th day of March, 2006.

> **s/Scott W. Gosnell**
> Scott W. Gosnell, Bar Number: GOS002
> Attorney for Defendant
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Road
> P.O. Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  sgosnell@webbeley.com

### CERTIFICATE OF SERVICE

I hereby certify that on this the 15th day of March, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF and served the following by U.S. Mail:

> Al Everitt Boyett
> 300 Fountain
> Atmore, Alabama  36503

> **s/Scott W. Gosnell**
> OF COUNSEL

---

Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).